[No. C041899. Third Dist. June 25, 2003.]

H. STERLING FENN et al., Plaintiffs and Appellants, v.
ROBERT SHERRIFF, Defendant and Respondent.

COUNSEL

Downey, Brand, Seymour & Rohwer and Frank E. Dougherty for Plaintiffs and Appellants.

Law Offices of William D. Kopper and William D. Kopper for Defendant and Respondent.

---

**OPINION**

**ROBIE, J.**—Pursuant to Family Code section 3102,[1] plaintiffs H. Sterling Fenn and Jan Fenn (grandparents) petitioned for a court order allowing them visitation with their grandchildren, Andrew and Benjamin, following the death of their daughter, Kathryn Sherriff. (All further section references are to the Family Code unless otherwise noted.) The children's father, defendant Robert Sherriff (father), opposed the petition and moved for summary judgment on the ground he and his new wife, who had adopted the children, both objected to court-ordered visitation. Among other things, father argued section 3102 "is unconstitutional as applied if it is construed to provide grandparent visitation over the objection of both parents." The trial court granted summary judgment on the ground grandparents had failed to allege father was an unfit parent and, in any event, had failed to raise a triable issue of fact as to father's fitness as a parent.

We conclude section 3102 is constitutional even though it may allow for court-ordered grandparent visitation over the objection of two fit parents. Although the fundamental right of parents to make decisions regarding the

---

[1] "If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child." (Fam. Code, § 3102, subd. (a).)

care, custody, and control of their children requires the court to give the decisions of fit parents special weight, it does not necessarily preclude a court from ordering visitation over the parents' objection.

We further conclude summary judgment was improper in this case because father's motion was based solely on the asserted facts that he and his wife were fit parents who objected to court-ordered visitation. Those facts were not legally sufficient to carry father's initial burden of showing that grandparents' petition for visitation had no merit. Because father did not meet his initial burden of showing grandparents' petition had no merit, the burden never shifted to grandparents to show a triable issue of fact. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Andrew and Benjamin Sherriff are the natural children of Robert and Kathryn Sherriff. The Fenns are the children's maternal grandparents.

Kathryn Sherriff died in August 2000 while she and father were in the process of getting divorced. Two months later, grandparents filed a petition for visitation under section 3102, alleging father was denying them visitation with the children. The parties agreed to undergo psychological evaluations and to allow grandparents supervised visitation with the children during the evaluation period.

In August 2001, after the case was transferred from Shasta County to Yolo County, father filed his response to the petition, alleging he had allowed grandparents to visit with the children at his discretion, in accordance with the recommendation of the children's counselors. He also alleged section 3102 was unconstitutional and that grandparents were unfit to have visitation with the children.

In September 2001, father remarried. In November 2001, grandparents caused an order to show cause to issue, seeking increased, unsupervised visitation with the children. Father opposed any additional visitation. The matter was set for trial in April 2002. Meanwhile, in December 2001, father's new wife adopted the children.

In February 2002, father moved for summary judgment on the ground he and his wife, who were both fit parents, opposed court-ordered visitation. Father argued section 3104, which was enacted after section 3102, takes precedence over section 3102, and section 3104 does not allow visitation over the objection of both parents. He also argued section 3102 was

unconstitutional as applied if interpreted to allow grandparent visitation after an adoption. Finally, he argued that "for a grandparent visitation petition to succeed over the objections of both parents, both parents would have to be unfit," and he and his wife were both fit parents.

In opposition, grandparents argued section 3104 did not supercede section 3102, section 3102 is constitutional, and there was a genuine issue of material fact regarding father's fitness as a parent.

The trial court granted summary judgment in favor of father because grandparents had failed to allege in their petition that father was an unfit parent and because, even if unfitness had been alleged, grandparents had failed to raise a triable issue that father was unfit.

DISCUSSION

I

*Standard of Review*

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

█ "Because the trial court's determination [on a motion for summary judgment] is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is

to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

"The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

II

*Grandparent Visitation After a Stepparent Adoption*

 Father sought summary judgment on the ground that he and his wife, who has adopted the children as her own, are both fit parents who oppose court-ordered visitation between the children and grandparents. Father contends the courts have no power "to award grandparent visitation over the objection of both parents living together in a family unit." For the reasons that follow, we disagree.

A

*Statutory Analysis of Section 3102 and Section 3104*

Sections 3102, 3103, and 3104 are the three statutes in the Family Code that specifically provide for grandparent visitation, each addressing different situations. Section 3102 allows grandparents (and certain other relatives) to seek visitation with their grandchildren when one of the children's parents is deceased. Section 3103 allows grandparents to seek visitation with their grandchildren in a pending dissolution proceeding or other family law proceeding in which custody of the children is already at issue. Section 3104 allows grandparents to seek visitation with their grandchildren in other circumstances.

Here, grandparents sought visitation under section 3102, which on its face allows the court to order grandparent visitation when one of the parents is deceased "upon a finding that the visitation would be in the best interest of the minor child." (§ 3102, subd. (a).) Subdivision (c) of the statute specifically addresses what happens when an adoption occurs following the parent's death: "This section does not apply if the child has been adopted by a person other than a stepparent or grandparent of the child. Any visitation rights granted pursuant to this section before the adoption of the child

automatically terminate if the child is adopted by a person other than a stepparent or grandparent of the child." Thus, under the plain language of section 3102, a stepparent adoption (like the one that occurred in this case) has no effect on the grandparents' right to seek court-ordered visitation with their grandchildren under that statute.

Father contends, however, that section 3102 must be read together and harmonized with section 3104, which compels a different conclusion. Under section 3104, "while the natural or adoptive parents are married," a grandparent can seek court-ordered visitation only if: (1) "[t]he parents are currently living separately and apart on a permanent or indefinite basis"; (2) "[o]ne of the parents has been absent for more than one month without the other spouse knowing the whereabouts of the absent spouse"; (3) "[o]ne of the parents joins in the petition with the grandparents"; or (4) "[t]he child is not residing with either parent." (§ 3104, subd. (b).) In addition, "[a]t any time that a change of circumstances occurs such that none of these circumstances exist, the parent or parents may move the court to terminate grandparental visitation and the court shall grant the termination." (*Ibid.*) In *Lopez v. Martinez* (2000) 85 Cal.App.4th 279 [102 Cal.Rptr.2d 71], the court held a stepparent adoption constitutes a "change of circumstances" requiring the termination of court-ordered visitation under section 3104. (*Id.* at pp. 284-285.)

According to father, "Section 3104(b) preempted the field of grandparent visitation when both parents are married" and therefore the limitations set forth in section 3104 apply even when the grandparents seek visitation under section 3102 following their child's death. We disagree.

■ "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ As we have already noted, by its terms section 3102 excepts from its application any case in which "the child has been adopted *by a*

*person other than a stepparent* or grandparent *of the child.*" (§ 3102, subd. (c), italics added.) The plain import of this language is that a court may order grandparent visitation under section 3102 following the death of a parent even when a stepparent adoption has occurred.[2]

Section 3104 addresses an entirely different situation than section 3102 and contains *its own exceptions.* Under section 3104, the court may order grandparent visitation when both parents are living (unlike § 3102), and when no custody proceeding is pending (unlike § 3103).[3] Under section 3104, however, if the natural or adoptive parents are married, visitation can be ordered only in limited circumstances. Stated succinctly, if the natural or adoptive parents are married and living together with the child, and neither parent joins in the petition with the grandparents, a petition for visitation may not be filed. (§ 3104, subd. (b).)

There is nothing in section 3104 to suggest the Legislature intended the limitations set forth in subdivision (b) of that statute to apply to petitions for visitation under section 3102. On the contrary, by the plain terms of section 3104, the limitations described in subdivision (b) of the statute apply only to "[a] petition for visitation *under this section.*" (§ 3104, subd. (b), italics added.)

The legislative history of section 3104 confirms that its enactment was not intended to affect or limit the right to seek visitation conferred by section 3102. At the time section 3104 was proposed, the Legislature recognized the existence of section 3102 and understood that a petition for visitation under that statute could be filed even when there had been a stepparent adoption. An early analysis of the bill proposing section 3104's enactment specifically noted that under existing law, "if the grandparents' adult child dies and leaves a minor child, the grandparents can request that they be allowed to visit with the child. This section is not applicable if [the] unmarried minor *is adopted by strangers.*" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 306 (1993-1994 Reg. Sess.) Feb. 25, 1993, p. 2, italics added.) The express purpose of the proposed section 3104 was "to *expand* the situations in which grandparents may come into court to seek a visitation order with their

---

[2]This provision was added to the predecessor of section 3102 (former Civ. Code, § 197.5) in 1970 (see Stats. 1970, ch. 1188, § 1, p. 2096), apparently in reaction to the decision a year earlier in *Roquemore v. Roquemore* (1969) 275 Cal.App.2d 912 [80 Cal.Rptr. 432], in which the court held that an adoption did not preclude an action for visitation rights under the statute.

[3]As one treatise has explained, "[s]ection 3104 closes a gap in prior law under which grandparents had no avenue to obtain court-granted visitation unless one of the parents had died or a marital action between the parents was before the court." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2002) ¶ 7:535, p. 7-175.)

grandchildren." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 306 (1993-1994 Reg. Sess.) Feb. 25, 1993, p. 3, italics added.) The bill analysis commented that the proposed section 3104 would "authorize grandparents to petition the court for visitation rights in *any* situation, thereby creating a right to an independent action"; however, that right was to be "limited in that a petition may not be filed while the parents are married, unless one or more of the . . . circumstances" ultimately included in subdivision (b) of section 3104 existed. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 306 (1993-1994 Reg. Sess.) Feb. 25, 1993, p. 2, italics added.)

It appears from both the language of section 3104 and its legislative history that the Legislature did not intend the limitations set forth in section 3104 to apply when the grandparents seek visitation under section 3102. It follows, therefore, that father's statutory argument is only *partly* correct: courts have no power "to award grandparent visitation over the objection of both parents living together in a family unit" *under section 3104.* The Legislature imposed no such limitation on a petition for visitation under section 3102, when one of the natural parents is deceased.

Father's reliance on the decision in *Lopez v. Martinez,* to support his argument that the limitations in subdivision (b) of section 3104 apply to a petition for grandparent visitation under section 3102 is misplaced. *Lopez* involved a petition for grandparent visitation under section 3104, and at no point in the opinion did the appellate court discuss or even mention the application of section 3102. ■ "An opinion is not authority for a proposition not considered." (*City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1318 [92 Cal.Rptr.2d 418].) Thus, *Lopez* provides no support for father's position.

## B

### *Constitutional Analysis*

■ Father contends that if section 3102 is applied to allow court-ordered grandparent visitation over his and his wife's objections, the statute "infringes upon their constitutional right to raise and nurture their children without undue interference by the state." On the record now before us, we disagree.

### 1. *Federal Due Process*

Under the due process clause of the Fourteenth Amendment to the United States Constitution, parents have a fundamental right to make decisions

concerning the care, custody, and control of their children. (*Troxel v. Granville* (2000) 530 U.S. 57, 65-66, 77 [120 S.Ct. 2054, 2059-2060, 147 L.Ed.2d 49] (plur. opn. of O'Connor, J. & conc. opn. of Souter, J.) (*Troxel*).) In *Troxel*, which, like the present matter, was a grandparent visitation case, "the United States Supreme Court held that a Washington statute authorizing visitation by a nonparent with a child was unconstitutional as applied to the circumstances of that case." (*Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848, 861 [102 Cal.Rptr.2d 476].) According to the *Troxel* plurality, that conclusion was compelled by "the combination of several factors" namely: (1) the absence of any allegation or finding by the court that the parent was unfit; (2) the absence of any allegation that the parent had sought to cut off visitation entirely; and (3) the "slender findings" on which the Washington trial court rested its award of visitation rights to the grandparents. (*Troxel, supra*, 530 U.S. at pp. 68-72 [120 S.Ct. at pp. 2061-2063] (plur. opn. of O'Connor, J.).) As the plurality explained: "[T]he Superior Court made only two formal findings in support of its visitation order. First, the [grandparents] 'are part of a large, central, loving family, all located in this area, and the [grandparents] can provide opportunities for the children in the areas of cousins and music.' [Citation.] Second, '[t]he children would be benefitted from spending quality time with the [grandparents], provided that that time is balanced with time with the childrens' [*sic*] nuclear family.' [Citation.] These slender findings, in combination with the court's announced presumption in favor of grandparent visitation and its failure to accord significant weight to [the mother's] already having offered meaningful visitation to the [grandparents], show that this case involves nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children's best interests. . . . As we have explained, the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." (*Id.* at pp. 72-73 [120 S.Ct. at pp. 2063-2064].)

Following *Troxel*, at least four California appellate opinions have found section 3102 unconstitutional as applied to the specific facts before the courts in those cases. (*Zasueta v. Zasueta* (2002) 102 Cal.App.4th 1242, 1244 [126 Cal.Rptr.2d 245]; *Herbst v. Swan* (2002) 102 Cal.App.4th 813, 814 [125 Cal.Rptr.2d 836]; *Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1101 [105 Cal.Rptr.2d 139]; *Kyle O. v. Donald R., supra*, 85 Cal.App.4th at p. 851.) For example, in *Kyle O.* this court reversed a grandparent visitation order under section 3102 where (1) "the trial court did not make any finding that [the father] was an unfit parent"; (2) the father "agreed that visitation was appropriate, agreed that [the child] needed a relationship with the grandparents, and agreed to allow visitation with them"; and (3) the father

"simply wanted [the child] to have a more flexible and spontaneous relationship with her maternal grandparents, such as she had with her paternal grandparents." (*Kyle O. v. Donald R., supra*, 85 Cal.App.4th at p. 863.) The court concluded: "In light of the fact [the father] was a fit parent who had not sought to cut off grandparent visitation completely, and in light of the absence of substantial evidence rebutting the presumption in favor of a fit parent's parenting decisions, the application of section 3102 to establish a schedule of visitation over [the father's] objection unduly infringed upon his fundamental parenting right to make decisions about the care, custody, and control of his daughter." (*Id.* at p. 864.)

We turn now to the application of *Troxel* and its progeny to the facts of the present case. Here, father sought summary judgment on grandparents' petition for grandparent visitation based on a very narrow set of facts he claimed were undisputed. In essence, father asserted in his separate statement of undisputed facts that he was entitled to summary judgment because: (1) he and his wife are married; (2) his wife has adopted the children; (3) both he and his wife oppose court-ordered visitation with plaintiffs; and (4) he and his wife are fit parents.

For father to prevail on his argument that he was entitled to summary judgment because section 3102 is unconstitutional as applied, we must be able to conclude that *any* grandparent visitation ordered by the court under the facts father presented in support of his motion would be unconstitutional. That leads us to frame the following dispositive question: Does the fundamental due process right of parents to make decisions concerning the care, custody, and control of their children preclude the state from *ever* ordering grandparent visitation over the objection of two fit parents? Based on *Troxel*, we conclude the answer is "no."

■ In *Troxel*, the plurality opinion of Justice O'Connor explained that a parent's fitness does not insulate the parent's decisions concerning his or her children from state intervention. The fitness or unfitness of a parent is important because "there is a *presumption* that fit parents act in the best interests of their children." (*Troxel, supra*, 530 U.S. at p. 68 [120 S.Ct. at p. 2061], italics added.) "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit) there will *normally* be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (*Id.* at pp. 68-69 [120 S.Ct. at p. 2061], italics added.) "[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (*Id.* at p. 70 [120 S.Ct. at p. 2062].)

Giving the parent's determination "special weight" is different than insulating the parent's determination from any court intervention whatsoever. *Troxel* does not support defendant's suggestion that a fit parent's decisions are immune from judicial review. Nor can we discern any basis in the law for reaching a different conclusion when there are two parents rather than one. The decision of father and his wife about whether and under what conditions grandparents should have visitation with their grandchildren is entitled to "special weight" under *Troxel*—assuming both are fit parents— but no more.[4]

Although father has not specifically requested that we consider any evidence beyond that cited in his separate statement of undisputed facts, we recognize there was undisputed evidence submitted in connection with the summary judgment motion showing that father and his wife had been allowing the grandparents some visitation with the children.[5] Father asserted in his declaration in support of the motion that he and his wife had "provided reasonable visitation with [the children] to [grandparents] . . . in accordance with the recommendations of Ray H. Carlson, Gail Winslow, Ph.D., and Dr. Richard Powell."[6] In their declarations in opposition to the motion, grandparents acknowledged they had been allowed to visit the children but complained their visits had been restricted "to a maximum of one hour visitations which have averaged once every 2 1/2 months." Grandparents also complained because father, among other things, (1) required the visits to be "supervised by a person selected by him"; (2) demanded they pay various sums connected with the supervised visits amounting to "approximately $5.78 per minute for a one hour visit"; (3) "prohibited [them] from giving to the children any gifts during the visits" and "from taking photographs or videotapes of [them] with the children"; and (4) "instructed [them] not to talk to the children about their mother."

The existence of the foregoing evidence—and the fact that the United States Supreme Court's decision in *Troxel* rested at least in part on the fact

---

[4] Interestingly, section 3104, which was enacted long before the decision in *Troxel* (see Stats. 1993, ch. 832, § 2, pp. 4505-4506), contains a provision that appears to comply with the Supreme Court's requirement that "special weight" be given to the decisions of fit parents. (See § 3104, subd. (e) ["There is a rebuttable presumption that the visitation of a grandparent is not in the best interest of a minor child if the natural or adoptive parents agree that the grandparent should not be granted visitation rights"].) No similar presumption is expressly required by section 3102; however, to comply with the constitutional requirements of *Troxel*, section 3102 must be read as though it contained a similar presumption.

[5] Whether they continue to do so now is not within our knowledge.

[6] It appears from other documents in the record that Carlson was the psychologist who conducted the psychological evaluations the parties agreed to at the outset of the case; Winslow was a therapeutic custody counselor whom father and the children's natural mother (Kathryn Sherriff) had seen; and Powell was a psychiatrist who had treated both father and Kathryn.

that the parent opposing the visitation petition in that case had not cut off visitation entirely—raises the question of whether we should look beyond the separate statement of facts filed by father in determining whether summary judgment was proper in this case on federal constitutional grounds. For the reasons that follow, we decline to do so.

 There is much authority for the proposition that *all* facts on which a moving party relies in seeking summary judgment must be included in the mandatory separate statement of undisputed facts filed in support of the motion. The summary judgment statute itself provides that "[t]he supporting papers *shall* include a separate statement setting forth plainly and concisely *all* material facts which the moving party contends are undisputed. . . . The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denial of the motion." (Code Civ. Proc., § 437c, subd. (b), italics added.) As for case law, this court has explained that "[w]hen a party applies for summary judgment, it *must* present a statement of undisputed facts specifying *each fact necessary for the relief it seeks.*" (*City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1294 [35 Cal.Rptr.2d 113], italics added.) To support this rule, we relied on an oft-quoted passage from *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327 [282 Cal.Rptr. 368]: "As Judge Zebrowski explains, *all* material facts must be set forth in the separate statement. 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist.* Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement.*'" (*Id.* at p. 337, quoting Zebrowski, *The Summary Adjudication Pyramid* (Nov. 1989) 12 L.A. Law. 28, 29.) As the court explained in *United Community Church*, the reason for this rule is a pragmatic one, with constitutional underpinnings: "Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed." (*United Community Church, supra,* 231 Cal.App.3d at p. 335.)

Recently, Division Three of the Court of Appeal, Fourth Appellate District held that the "Golden Rule" from *United Community Church* cannot be deemed an "absolute prohibition against consideration of . . . evidence" not referenced in the separate statement. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315 [125 Cal.Rptr.2d 499].) According to that court, the summary judgment statute "demands a rule composed of a baser metal. . . . [W]e may not mechanically conclude, as the 'Golden Rule' would have us do, that the [trial] court should never consider

evidence not referenced in the separate statement. The statute is permissive, not mandatory . . . . Whether to consider evidence not referenced in the moving party's separate statement rests with the sound discretion of the trial court, and we review the decision to consider or not consider this evidence for an abuse of that discretion." (*Id.* at pp. 315-316.)

Here, it appears from the record that in granting summary judgment to father the trial court neither exercised nor declined to exercise its discretion to consider evidence not referenced in father's separate statement. This is so because the court found the evidence that father and his wife were fit parents, which *was* referenced in father's separate statement, sufficient to require judgment in their favor. Because the trial court was never called upon to look beyond father's separate statement, we are not called upon to determine whether the trial court abused its discretion in this regard. Nevertheless, because an appellate court reviews a trial court's decision on summary judgment de novo (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]), and because we "must affirm the judgment if it is supportable on another basis which establishes [father] must prevail as a matter of law" (*Lopez v. Tulare Joint Union High School Dist.* (1995) 34 Cal.App.4th 1302, 1329 [40 Cal.Rptr.2d 762]), we undoubtedly have the same discretion as the trial court to consider evidence not referenced in the moving party's separate statement in determining whether summary judgment was proper. Whether we should exercise that discretion, however, is another matter.

The court in *San Diego Watercrafts, Inc.*, suggested factors that should be considered in deciding whether to look beyond the moving party's statement of undisputed facts. Where the facts before the court are "relatively simple," the evidence that compels affirming the summary judgment was "clearly called to the attention of court and counsel," and the moving party's entitlement to judgment in its favor is "obvious to the court and to the [opposing] party," it would be an abuse of discretion to reverse a summary judgment "because of a mere procedural failure" by the moving party in failing to include the dispositive fact in its separate statement. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, supra,* 102 Cal.App.4th at p. 316.) Of course, "[i]n exercising its discretion whether or not to consider evidence undisclosed in the separate statement, the court should also consider due process implications noted in *United Community Church*." (*Ibid.*) "[D]ue process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail." (*Ibid.*)

Under the circumstances of this case, we conclude the relevant factors weigh in favor of declining to exercise our discretion to look beyond

father's separate statement of facts in determining whether summary judgment was proper. First and foremost, father did not ask the trial court to look beyond his separate statement, and he has not asked this court to do so. In fact, father expressly seeks to have the summary judgment affirmed *regardless* of whether he and his wife are allowing grandparents to visit with the children.

Despite his assertion in his declaration that he and his wife were providing "reasonable visitation" to grandparents, father never attempted to rely on that fact to support his motion for summary judgment in the trial court. Instead, father sought summary judgment based solely on the ground that he and his wife objected to court-ordered visitation. Father specifically invited the trial court to hold that "allow[ing] grandparent visitation over the objections of both parents would be an unconstitutional application of" section 3102.

Father takes the same position in this court. Although the factual summary in father's brief refers in passing to the fact that he and his wife had been providing some visitation to grandparents, nowhere in his brief does father request that we consider this voluntary allowance of visitation in determining whether to affirm the summary judgment in his favor. On the contrary, father specifically contends "it [is] not necessary for a fit parent to provide *any* visitation to a grandparent in order to defeat a petition for grandparent visitation rights." (Italics added.) Further, in the conclusion to his brief, father specifically asks us to find that he and his wife "have the right to deny [grandparents] visitation with [the] children." Thus, it is quite apparent father does not *want* us to affirm summary judgment in his favor based on the fact, unreferenced in his separate statement, that he and his wife were voluntarily providing some visitation.

Under these circumstances, it seems that father's omission of the allowance of some visitation from his separate statement of facts was not "a mere procedural failure." (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, supra,* 102 Cal.App.4th at p. 316.) Instead, father has made a conscious, tactical choice to seek summary judgment based solely on the asserted facts that he and his wife are fit parents who object to court-ordered visitation. We should not reach beyond the moving party's separate statement and affirm a summary judgment based on consideration of a fact that the moving party does not even want us to consider.

Another reason for not looking beyond father's separate statement is that the facts here are not "relatively simple" and father's entitlement to judgment in his favor is far from "obvious," even if we were to take into account

the fact that he and his wife have voluntarily provided some visitation to grandparents. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, supra,* 102 Cal.App.4th at p. 316.) It is true that in their analysis of the federal constitutional question presented here, *Troxel* and at least two of the California cases that followed it placed significant emphasis on the fact that the fit parents who opposed court-ordered visitation in those cases had voluntarily allowed some grandparent visitation. (See *Troxel, supra,* 530 U.S. at p. 71 [120 S.Ct. at pp. 2062-2063]; *Kyle O. v. Donald R., supra,* 85 Cal.App.4th at pp. 863-864; *Punsly v. Ho, supra,* 87 Cal.App.4th at p. 1108.) It does not follow, however, that the decision of a fit parent to allow some amount of grandparent visitation, however small and under whatever circumstances, necessarily renders imposition of any court-ordered visitation unconstitutional as a matter of law regardless of any other attendant facts or circumstances.

In *Troxel,* the evidence showed that the mother believed " 'grandparent visitation [wa]s in the best interest of the children,' " and she wanted grandparents to have "one day of visitation per month (with no overnight stay) and participation in [the mother's] family's holiday celebrations." (*Troxel, supra,* 530 U.S. at p. 71 [120 S.Ct. at p. 2063].) The grandparents, on the other hand, wanted "two weekends per month and two full weeks in the summer." (*Ibid.*) On this evidence, the plurality found the visitation order unconstitutional in part because the trial court "fail[ed] to accord significant weight to [the mother's] already having offered *meaningful* visitation to the [grandparents]." (*Id.* at p. 72 [120 S.Ct. at p. 2063], italics added.)

In *Kyle O.,* the evidence showed that the father "agreed the grandparents needed to be involved in [the child's] life" and "thought the grandparents should be able to see [the child] in the same fashion that his family saw her, which depended upon his and [the child's] schedule." (*Kyle O. v. Donald R., supra,* 85 Cal.App.4th at p. 858.) At trial, the father testified "that he would allow [the grandparents] to have spontaneous visits with" the child and that the child "could continue to see the grandparents even if visitation were left completely to his discretion." (*Ibid.*) Based on this evidence, this court found the visitation order unconstitutional in part because the father "agreed that visitation was appropriate, agreed that [the child] needed a relationship with the grandparents, and agreed to allow visitation with them; he only contested their right to specify the amount and timing of the visitation." (*Id.* at p. 863.)

In *Punsly,* the evidence showed that the mother, who lived in San Diego, had offered the grandparents, who lived in Los Angeles, visits with the child in San Diego once every three months on Sundays, along with telephone calls, in order "to minimize the long drives to Los Angeles and to require

more of an effort by the [grandparents] to visit [the child] in San Diego." (*Punsly v. Ho, supra,* 87 Cal.App.4th. at p. 1108.) In finding the visitation order (which provided for visits once every *other* month) unconstitutional, the court relied in part on the mother's "willingness to voluntarily schedule visitation." (*Id.* at pp. 1102, 1110.)

We do not discern from these opinions that the voluntary provision of *some* visitation by a fit parent, however small and under whatever conditions, necessarily renders any court-ordered visitation unconstitutional. Rather, in the words of the *Troxel* plurality, an offer of "meaningful visitation" to the grandparents is entitled to "significant weight" in determining whether intervention by the court would be constitutional. (*Troxel, supra,* 530 U.S. at p. 72 [120 S.Ct. at p. 2063].)

On the record before us, which we must view in the light most favorable to grandparents, it is far from obvious that father has offered them "meaningful" visitation with the children by allowing them one-hour supervised visits on an average of once every two and one-half months, which cost them approximately $5.78 per minute and during which they are prohibited from giving the children any gifts, from taking photographs or videotapes of themselves with the children, and from talking to the children about their mother. Moreover, in contrast to the parents in *Troxel* and *Kyle O.*, it appears father does not believe visitation, at least with grandfather, is in the children's best interests and does not agree grandfather needs to be involved in the children's lives. On the contrary, he specifically stated in his declaration in support of the summary judgment motion: "I do not believe contact with [grandfather] is good for our two children."

We need not decide, however, what bearing these facts might have on the summary judgment in father's favor. For our purposes, it is sufficient to conclude that the facts regarding father's voluntary provision of some visitation which he chose to omit from his separate statement are not "relatively simple," and father's entitlement to judgment in his favor is far from "obvious" based on those facts. Taken together with the inescapable conclusion that father does not want us to consider his voluntary provision of some visitation in determining whether summary judgment was proper, these factors lead us to decline to exercise our discretion to look beyond father's separate statement in reviewing the summary judgment.

Accordingly, we limit ourselves to the question we framed above: Does the fundamental due process right of parents to make decisions concerning the care, custody, and control of their children preclude the state from *ever* ordering grandparent visitation over the objection of two fit parents? As we

have explained, the answer to that question is "no." The decision of fit parents regarding grandparent visitation is entitled to special weight, but not necessarily immunity from judicial review. It follows, therefore, that the facts presented by father in support of his summary judgment motion, even if undisputed,[7] are insufficient to compel the conclusion that any court-ordered visitation in this case would necessarily be an unconstitutional infringement on the due process right of father and his wife to make decisions concerning the care, custody, and control of their children. It may be that ultimately, based on a more detailed record following an evidentiary hearing, section 3102 cannot be constitutionally applied to allow court-ordered visitation in this case. We express no opinion on that point. For our purposes, on appeal from the summary judgment in favor of father, it is sufficient to conclude that court-ordered visitation would not necessarily be unconstitutional based solely on the limited facts set forth by father in support of his motion.

## 2. *State Parenting Right*

Father contends "[a] parent's fundamental liberty interest to raise his or her children without undue state interference is also protected by article 1 [*sic*], section 1 of the California Constitution." Accordingly, we must analyze father's constitutional argument under the state Constitution as well.

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." It has long been held in California, although not necessarily with specific reference to this constitutional provision, that parents have a fundamental right to the care, custody, and control of their children. Our Supreme Court has explained that "the interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights." (*In re B. G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244]; see also *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514] ["Parenting is a fundamental right"].) It has also long been held, however, that "the rights of parenthood are not absolute, but subject to the superior right of the state to intervene and protect the child against abuse of parental authority." (*Odell v. Lutz* (1947) 78

---

[7]Grandparents contend they presented sufficient evidence to raise a triable issue as to whether father is a fit parent. Because we conclude father never met his initial burden of showing grandparents' petition was without merit, we do not reach the issue of whether grandparents' evidence raised a triable issue of fact as to parental fitness.

Cal.App.2d 104, 106 [177 P.2d 628]; see also *In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198].) The fundamental right of parents to the care, custody, and control of their children "do[es] not exist in a vacuum wholly devoid of legitimate competing interests." (*In re Angelia P., supra,* 28 Cal.3d at p. 917.) Children have constitutional rights also (*In re Roger S.* (1977) 19 Cal.3d 921, 927-928 [141 Cal.Rptr. 298, 569 P.2d 1286]), and "[t]he interest of parents in maintaining their relationship with their children must be balanced with the interests of the child in secure and sufficient parenting." (*In re Albert B.* (1989) 215 Cal.App.3d 361, 377 [263 Cal.Rptr. 694].) In some circumstances, the parenting right "may be forced to yield to rights inherent in the child." (*In re R. S.* (1985) 167 Cal.App.3d 946, 957 [213 Cal.Rptr. 690], italics omitted.)

With these principles in mind, the question we address under the state Constitution is the same one we addressed under the federal due process clause: Does the fundamental right of parents to make decisions concerning the care, custody, and control of their children preclude the state from *ever* ordering grandparent visitation over the objection of two fit parents? Again, we conclude the answer is "no."

As we have explained, the right of parents to the care, custody, and control of their children is not absolute, and this is true even when the parents are deemed fit. Under California law, a finding of parental unfitness is not necessary for a court to award custody of a child to a nonparent against the claim of a parent. (*In re B. G., supra,* 11 Cal.3d at pp. 698-699.) Instead, a court can award custody to a third party based on "a clear showing that such award is essential to avert harm to the child." (*Id.* at p. 699.)

 If a court can deprive fit parents of the *custody* of their children without violating the parents' fundamental right to the care, custody, and control of their children, then certainly a court can order grandparent *visitation*—a much more limited form of interference with the parents' custodial rights—without necessarily causing such a violation.

There is some authority for the proposition that the same test which applies to a custody award to a nonparent should apply to a visitation award to a nonparent—that is, that "judicially compelled visitation against the wishes of both parents" "must not be allowed unless it is clearly and convincingly shown that denial of visitation would be detrimental to the child." (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1517, 1520 [280 Cal.Rptr. 862] [involving a motion for visitation by a biologically unrelated person under former Civ. Code, § 4601 (now § 3100)].) In the procedural posture of this case, we have no occasion to express either

agreement or disagreement with that authority. For our purposes, it is sufficient to conclude that because the fundamental parenting right recognized by California courts is not absolute, the opposition of two fit parents to court-ordered grandparent visitation does not, by itself, preclude the court from ordering visitation. Accordingly, father was not entitled to summary judgment on state constitutional grounds based on the limited facts he presented in support of his motion.

## 3. *Equal Protection*

One further constitutional argument remains to be addressed. As we have previously explained, if: (1) a stepparent adoption occurs; (2) the natural parent, stepparent, and child are living together; and (3) both parents object to court-ordered visitation, no petition for grandparent visitation is permitted under section 3104. Under section 3102, on the other hand, if one of the natural parents is deceased, a grandparent visitation petition may be filed notwithstanding a stepparent adoption, even if the surviving natural parent and the stepparent live together with the child and object to visitation.[8]

Father contends this distinction between section 3102 and section 3104 violates the equal protection clauses of the United States and California Constitutions. He hypothesizes that if Kathryn Sherriff were only missing, instead of deceased, her parents would have no right to petition for visitation with the children, and "[t]here is no reason to afford greater grandparent visitation rights to the parents of a deceased child as opposed to parents of a missing child." For the reasons that follow, we disagree.

"The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) "As a foundational matter, . . . all meritorious equal protection claims require a showing that 'the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.'" (*People v. Wutzke* (2002) 28 Cal.4th 923, 943 [123 Cal.Rptr.2d 447, 51 P.3d 310], quoting *In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics omitted.) "There is . . . no requirement that persons in different circumstances must be treated as if their situations were similar." (*People v. McCain* (1995) 36 Cal.App.4th 817, 819 [42 Cal.Rptr.2d 779].)

---

[8]Of course, whether grandparent visitation actually will be ordered in such a situation depends on the facts of the particular case, considered in light of the "special weight" that must be given to a fit parent's decision regarding visitation.

Of course, "[t]here is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].)

 Here, father's equal protection argument posits the existence of two similarly situated groups—(1) natural parent/stepparent families where the other natural parent is deceased; and (2) natural parent/stepparent families where the other natural parent is missing. It is important to note, however, that a stepparent adoption cannot occur simply because one of the natural parents is "missing." Generally, the consent of a living natural parent is required for an adoption unless the natural parent has deserted the child, had his or her parental rights terminated, surrendered those rights, or relinquished the child for adoption. (See §§ 8604-8606.) Thus, for purposes of father's equal protection argument, the two groups subject to unequal treatment under sections 3102 and 3104 are more accurately described as: (1) natural parent/stepparent families where the other natural parent is deceased; and (2) natural parent/stepparent families where the other natural parent is alive, but has surrendered, lost, or forfeited his or her parental rights.

With the relevant groups properly understood, we conclude father has met his initial burden of showing a classification that affects two similarly situated groups in an unequal manner. The two groups at issue are similar because the members of each group consist of nuclear families made up of one natural parent and one adoptive stepparent living together with their child or children. The primary difference between the two groups is whether the other natural parent is alive or dead. It is this difference, however, "which is challenged as not justified by the purpose of [the statutes at issue]." (*People v. Nguyen, supra,* 54 Cal.App.4th at p. 715.) "In our view, these two groups are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment." (*Ibid.*)

 "The next step in analyzing an equal protection challenge is a determination of the appropriate standard of review." (*People v. Nguyen,*

*supra*, 54 Cal.App.4th at p. 715.) In reviewing an equal protection challenge, the courts generally apply one of two tests—the rational relationship test or the strict scrutiny test. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 640-641 [88 Cal.Rptr.2d 283, 982 P.2d 154].) The more stringent strict scrutiny test generally applies to cases involving " 'suspect classifications' " or touching on " 'fundamental interests.' " (*Id.* at p. 641.)

Father suggests we should apply the strict scrutiny test here because the challenged classification involves "matters concerning the fundamental right of parents to direct the upbringing of their children." Not every classification involving a fundamental right warrants strict scrutiny, however.

"Although a fundamental interest may be involved, both the United States Supreme Court and [the California Supreme Court] have recognized that not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny standard. When the regulation merely has an incidental effect on exercise of protected rights, strict scrutiny is not applied. [Citations.] It is only when there exists a real and appreciable impact on, or a significant interference with the exercise of the fundamental right that the strict scrutiny doctrine will be applied." (*Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 47 [157 Cal.Rptr. 855, 599 P.2d 46].)

We conclude the classification father challenges does ·not warrant strict scrutiny. In essence, father complains that because the other natural parent of his children is deceased, rather than simply missing, he and his wife are subject to a petition for grandparent visitation under section 3102. The mere fact that defendant and his wife are *subject to* a visitation petition, however, is not "a real and appreciable impact on, or a significant interference with the exercise of" their fundamental right to make parenting decisions. (*Fair Political Practices Com. v. Superior Court, supra*, 25 Cal.3d at p. 47.) The trial court may ultimately determine that no court-ordered visitation is warranted under the circumstances presented, in which case the classification of which father complains will have had no "real and appreciable impact" on the fundamental right of father and his wife to make parenting decisions. Moreover, in determining whether court-ordered visitation is warranted in this particular case, the trial court will have to take into account the fundamental parenting right of father and his wife under both the state and federal Constitutions. At the very least, under *Troxel*, the trial court will have to accord "special weight" to the decision of father and his wife regarding visitation (assuming they are found to be fit parents). Because the fundamental right at issue here will be adequately protected by the trial court in its determination of the petition, we conclude strict scrutiny is not warranted in determining whether the Legislature violated the equal

protection clause by subjecting certain natural parent/stepparent families to the *possibility* of court-ordered grandparent visitation.

We therefore apply the rational relationship test to father's equal protection challenge. Under that test, father bears the burden of demonstrating that the challenged classification is invalid because the classification bears no rational relationship to a conceivable legitimate state purpose. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10].) We conclude father has failed to carry that burden.

Father contends "[t]here is no basis," rational or otherwise, for allowing "an adopting stepparent full rights to control visitation if the natural parent is missing, but not if the natural parent is deceased." We disagree.

As we have explained, the classification the Legislature created in section 3102 and section 3104 distinguishes between natural parent/stepparent families where the other natural parent is deceased, and natural parent/stepparent families where the other natural parent is alive, but has surrendered, lost, or forfeited his or her parental rights. We perceive a rational basis for this distinction. When a child is deprived of a natural parent by that parent's death, the parent's family may be the only means of maintaining the child's link with his or her paternal or maternal family, including their ancestry, heritage, culture, traditions, and medical history. The Legislature reasonably could have determined that in such circumstances, members of the deceased parent's family should have the opportunity to demonstrate to a court that visitation with the child will further this legitimate state interest. That is exactly the opportunity that section 3102 provides by allowing "the children, siblings, parents, and grandparents of the deceased parent" to petition for visitation rights. (§ 3102, subd. (a).)

On the other hand, when the natural parent is alive, but has surrendered, lost, or forfeited his or her parental rights, the interest in maintaining the child's connection to his or her extended paternal or maternal family is not so compelling. The Legislature reasonably could have determined that when a living parent no longer has any parental rights, and a new nuclear family has been created by a stepparent adoption, the importance of "honor[ing] the integrity of the nuclear family unit and the ability of married, cohabiting parents to make decisions free from state interference" (*Lopez v. Martinez, supra,* 85 Cal.App.4th at p. 286) outweighs any interest in preserving the child's connection to the extended family of the parent whose rights were lost.

Because we find a rational basis for the classification father challenges, we reject father's equal protection argument.

## III

### *Sufficiency of the Petition*

Working from the trial court's ruling in this case—that grandparents failed to plead father's unfitness as a parent in their petition—father contends summary judgment was proper because grandparents' petition "did not allege that [father] was unfit, the children would suffer any harm from the denial of visitation, nor allege any other special factors justifying visitation." In effect, father contends the petition was insufficient to state a cause of action for grandparent visitation.

■ "[W]here the defendant asserts a failure of the complaint to state a cause of action, the summary [judgment] motion is tantamount to a motion for judgment on the pleadings." (*Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1478 [16 Cal.Rptr.2d 888].) On review of a judgment on the pleadings, we must accept the plaintiff's factual allegations as true, giving them a liberal construction and determine whether those allegations are sufficient to constitute a cause of action. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515-516 [101 Cal.Rptr.2d 470, 12 P.3d 720].)

■ The petition here alleged that grandparents are the maternal grandparents of the minor children; that the children's mother is deceased; that father had left the area and taken the children with him; that grandparents had not been allowed to see the children since their daughter's death; and that grandparents "have a warm and caring relationship with the children which has always bordered on a parent/child relationship, and it is in the best interests of the children that this relationship continue."

These allegations were sufficient to state a cause of action for grandparent visitation under section 3102 on its face. In relevant part, the statute provides that "[i]f either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child." (§ 3102, subd. (a).) Grandparents alleged all that was required by the statutory language to establish a claim for grandparent visitation rights under section 3102.

Father contends, however, that because *Troxel* establishes "the presumption that a fit parent acts in the best interests of his children with respect to

grandparent visitation," it was incumbent on grandparents to plead more than what the face of the statute required—either that father was an unfit parent or some other "special factors or harm that will accrue to the children in the absence of grandparent visitation."

It is true, as we have explained, that a fit parent's parental decisions are entitled to "special weight" under *Troxel* in deciding a petition for grandparent visitation. Nothing, however, requires grandparents seeking visitation rights to *plead* the parent's fitness or unfitness, or any other "special factor" justifying a visitation order. The only legal principle cited by father, and relied upon by the trial court, to impose this pleading requirement on grandparents was the rule that "a party cannot successfully resist summary judgment on a theory which was not pleaded in the complaint." (*Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 629 [86 Cal.Rptr.2d 497]; see also *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 541 [30 Cal.Rptr.2d 706].) That rule is inapposite here, however.

Grandparents did not seek to resist father's summary judgment motion on a theory different from the one they pled in their complaint. They sought court-ordered visitation with their grandchildren under section 3102, and father moved for summary judgment on the ground that they were not entitled to any such visitation over the objections of father and his wife. As the moving party, father bore the burden of presenting the court with sufficient facts to justify the relief he sought, and he attempted to meet this burden in part by asserting in his separate statement of facts that he and his wife are fit parents. When, in opposing the motion, grandparents sought to raise a triable issue as to the parental fitness of father and his wife, grandparents were not resisting summary judgment on a theory not pled in the complaint, but simply responding to material facts father contended were undisputed—as they are required to do by the summary judgment statute. (Code Civ. Proc., § 437c, subd. (b).)

 "A cardinal rule of pleading is that only the ultimate facts need be alleged." (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 606 [98 Cal.Rptr.2d 277].) "The California Supreme Court has consistently held that 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.' " (*Id.* at p. 608, quoting *Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462].)

Here, grandparents' petition provided father with sufficient facts to acquaint him with the nature, source, and extent of their cause of action for grandparent visitation under section 3102. Because parental unfitness is not an element of a cause of action under section 3102 (although it may affect the court's analysis in determining the petition), grandparents were not required to plead that father and his wife were unfit parents. Liberally construed, grandparents' petition is sufficient to state a cause of action for grandparent visitation.

## IV

### Proof of Harm

Citing the rule applicable to awards of *custody* to nonparents (see *In re B. G.*, *supra*, 11 Cal.3d at pp. 698-699), father "urges this court to adopt a standard that requires grandparents seeking visitation under Family Code [section] 3102 to plead and prove harm to the child in [the] absence of such grandparent visitation." Father further contends that "grandparent petitioners should have to prove by clear and convincing evidence that the child will suffer harm or detriment absent grandparent visitation." He concludes by arguing that "[u]nder this standard, [grandparents'] pleadings and evidence included in their Separate Statement of Undisputed Material Facts fail to support a cause of action."

Father's argument is premised on a misunderstanding of summary judgment law. On review of a summary judgment, before we ever look at whether the opposing party demonstrated the existence of a triable, material factual issue, we must determine "whether the moving party's showing has established facts which justify a judgment in movant's favor." (*Hernandez v. Modesto Portuguese Pentecost Assn.*, *supra*, 40 Cal.App.4th at p. 1279.) What this means is that, assuming for the sake of argument a showing of harm or detriment to the children is required to support an order for grandparent visitation under section 3102,[9] it was father's burden to prove initially that grandparents could not prove harm or detriment to the children if no visitation was ordered. Father did not carry that burden. As we have explained, father's motion was premised on a very limited set of "undisputed" facts and grounded on the argument that grandparent visitation can *never* be ordered over the objection of two fit parents. Father offered no facts in his separate statement to show that grandparents could not show harm or detriment to the children from the absence of visitation with grandparents.

---

[9]As we have observed already, under the procedural posture of this case, we have no occasion to reach this issue.

Because father failed to satisfy his prima facie burden, the summary judgment cannot be sustained on this ground.

## V

### *Triable Issue as to Parental Fitness*

Father's final argument is that grandparents failed to raise a triable issue of fact as to the fitness of father and his wife as parents. As we have previously explained, however, we need not reach this issue because we conclude father never carried his initial burden of presenting the court with facts justifying a judgment in his favor. Because the only facts father offered in support of his motion —that he and his wife are fit parents who object to court-ordered visitation—are not sufficient to show grandparents' petition for grandparent visitation has no merit, the burden never shifted to grandparents to raise a triable issue of fact. Thus, whether a triable issue exists regarding parental fitness is immaterial at this stage of the proceedings.

### DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 27(a).)

Raye, J., concurred.

**SIMS, Acting P. J.**—I concur in the majority's statutory analysis undertaken in part II.A. of the majority opinion.

With respect to the question whether father has shown that Family Code section 3102 cannot constitutionally be applied to him, I agree he has not, for the following reasons:

Father can defeat the grandparents' claims to visitation by showing (1) he is a fit parent and (2) he is willing to provide meaningful visitation to the grandparents. (*Troxel v. Granville* (2000) 530 U.S. 57, 65-72 [120 S.Ct. 2054, 2059-2064, 147 L.Ed.2d 49]; *Kyle O. v. Donald R.* (2000) 85 Cal.App.4th 848, 861 [102 Cal.Rptr.2d 476].) In this case, father showed (1) but not (2). By failing to identify evidence of visitation in his separate statement in the trial court, and by failing to ask this court to exercise its discretion to consider such evidence in our de novo review of the record, father has failed to put the question of visitation properly at issue, as stated

in the majority opinion. At oral argument, counsel for the father admitted the question of visitation was not litigated in the summary judgment proceeding. The summary judgment must be reversed on that basis.

Respondent's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.