[No. B138758. Second Dist., Div. Seven. Dec. 6, 2000.]

RACHEL LOPEZ et al., Plaintiffs and Respondents, v.
ELIZABETH MARTINEZ, Defendant and Appellant.

COUNSEL

William J. Cleary, Jr., and Walter M. Kaye for Defendant and Appellant.

Link K. Schwartz for Plaintiffs and Respondents.

OPINION

JOHNSON, J.—Appellant Elizabeth Martinez has refused to allow respondents, Rachel and Ruben Lopez, to visit her son, Daniel Martinez. Daniel is respondents' grandson and the biological son of appellant and Carl Blair. Respondents petitioned for visitation rights pursuant to Family Code section 3104, which gives grandparents standing to petition for visitation when a

minor's parents are living separately or one parent has been absent for over a month. Because Carl Blair had been absent since Daniel's birth, respondents had standing. After respondents' visitation petition was initiated, Elizabeth's husband, Hector Martinez, adopted Daniel. Under Family Code section 3104, a court must terminate grandparental visitation should circumstances change so the statutorily defined requirements for standing are no longer met. Although Hector became Daniel's legal father, the trial court found the adoption was not a "change of circumstances" as intended by the Legislature to mandate automatic termination of visitation upon parental request. We find the trial court's interpretation of the statute was erroneous and therefore we reverse.

### Factual and Procedural Background

In 1990, appellant Elizabeth Martinez conceived a child with her live-in boyfriend, Carl Blair. After Carl learned of Elizabeth's pregnancy, the two ended their relationship and Elizabeth moved into the home of her parents, respondents Rachel and Ruben Lopez. Elizabeth lived in her parents' home throughout her pregnancy and gave birth to her son, Daniel Martinez, on January 22, 1991. Following Daniel's birth, Carl neither contacted Elizabeth and Daniel, nor provided any support. Elizabeth and Daniel lived with the Lopezes until Daniel was four and one-half years old. During those years, Elizabeth worked and attended school while the Lopezes provided abundant assistance in rearing her son. More than mere babysitters and even more than many grandparents, the Lopezes deeply loved and doted on Daniel, bringing him to church with them, arranging for lavish festivities on his birthdays, and celebrating holidays together. Unfortunately Daniel's birth, although a blessing for both mother and grandparents, was not enough to calm the historically stormy relationship between Elizabeth and her mother, Rachel. Elizabeth was especially perturbed when Rachel disregarded Elizabeth's parenting philosophies and refused to respect rules Elizabeth had established for Daniel.

In 1995, Elizabeth met Hector Martinez. The two were married, and Elizabeth moved out of her parents' home and formed a nuclear family unit with Daniel and Hector. The tension already present between the Lopez and Martinez households increased until Elizabeth refused to allow her parents to see their grandchild.

In August 1998, the Lopezes initiated an order to show cause petition pursuant to Family Code section 3104, seeking to gain visitation with Daniel. Because Daniel's biological father was absent and had not made his whereabouts known to Elizabeth or Daniel, the trial court found Elizabeth's

parents had standing to file the petition under Family Code section 3104.[1] Although Hector and Elizabeth had been living together with Daniel as a family unit since their marriage, Hector had not yet adopted Daniel and so could not be considered Daniel's parent for purposes of the statute. The court ordered the Lopezes and Martinezes to attend mediation and family counseling with a therapist in hopes the families could work out their differences outside of court.

The attempts at out-of-court reconciliation failed miserably. Meanwhile, unbeknownst to the Lopezes, the Martinezes had initiated proceedings for Hector to adopt Daniel, and the petition for adoption was granted on August 30, 1999. In November 1999, after the failed effort at mediation, the Lopezes (who were then unaware of the adoption) filed an application for an order to show cause to establish visitation.

A hearing was conducted on December 13, 1999, to determine whether visitation with his grandparents was in Daniel's best interest. The clinical psychologist who had conducted the therapy sessions with the two families testified the Martinezes would not make themselves available for counseling, and had cancelled scheduled appointments. (In fact, Elizabeth and her attorney failed to appear at the visitation hearing.) The psychologist also verified the Martinezes had never accused the Lopezes of child abuse, endangerment, or neglect. Rather, she said, it seemed the Martinezes' decision to refuse grandparental visitation was due to "the clash of philosophies across generations." Based on her research and experience, she opined the denial of grandparental visitation would have negative repercussions on Daniel's emotional welfare; since his grandparents had been "his primary caretakers for so long," Daniel would probably have "feelings of abandonment," "develop insecurities," and have "difficulty reaching out to others."

Based on this expert testimony, the court found the requirements of subdivision (a)(1) and (2) of section 3104 were satisfied: (1) visitation was in Daniel's best interest due to the "primary attachment bond" between Daniel and the Lopezes, and (2) this interest was important enough to

---

[1]Unless noted, all further statutory references are to the Family Code. Section 3104 provides: "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: [¶] (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child. [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority. [¶] (b) A petition for visitation under this section may not be filed while the natural or adoptive parents are married, unless one or more of the following circumstances exist: [¶] (1) The parents are currently living separately and apart on a permanent or indefinite basis. [¶] (2) One of the parents has been absent for more than one month without the other spouse knowing the whereabouts of the absent spouse . . . ."

outweigh Elizabeth's right to exercise her parental authority because denial of visitation would likely be a "severe detriment" to Daniel. Thus, the court granted the Lopezes' petition for visitation with their grandson.

In December 1999, Elizabeth notified the court Hector had formally adopted Daniel and moved ex parte to stay the visitation order. The request for stay was granted and a hearing was held on December 29, 1999, to determine whether the adoption qualified as a "change of circumstances" requiring termination of visitation under section 3104. The trial court found the adoption was not a "change of circumstances" for purposes of the statute and denied Elizabeth's motion to terminate the Lopezes' visitation rights, but stayed its visitation order pending appeal.

## DISCUSSION

Determining the interpretation of a statute and its applicability to a given situation is a question of law. Thus, we review such an issue independently and are not bound by the trial court's conclusions. (*Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014].) In construing a statute, we must identify the Legislature's intent in order to carry out the purpose of the law. (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) We determine the legislative intent by first examining every word of the statute "according to the usual, ordinary import of the language employed in framing [it]." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500].) The words in the statute "must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." (*Johnstone v. Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].)

### I. *Giving Effect to the Legislative Intent Behind the Statute Requires Termination of Respondents' Visitation Rights.*

The Family Code does not confer standing upon grandparents to file a petition for visitation while a minor child's natural or adoptive parents are married, unless certain circumstances exist. Pertinent to this case, grandparents have standing when the parents are married but "currently living separately and apart on a permanent or indefinite basis" or "[o]ne of the parents has been absent for more than one month without the other spouse knowing the whereabouts of the absent spouse." (§ 3104, subd. (b)(1), (2).) If a court grants grandparental visitation pursuant to one of these circumstances and "a change of circumstances occurs such that none of these circumstances exist, the parent or parents may move the court to terminate

grandparental visitation and the court *shall* grant the termination." (*Id.* at subd. (b), italics added.)

■ Appellant does not dispute the Lopezes had standing under the statute to file their initial visitation petition. However, she argues Hector's adoption of Daniel constituted a change of circumstances because Hector became Daniel's legal father, and because Daniel was living together as a family unit with his married parents, the statutory prerequisite for court-ordered visitation was no longer satisfied.

Respondents insist the Legislature did not intend this sort of adoption to be a change of circumstances requiring a court to terminate visitation upon a parent's request. The trial court agreed and held the Legislature, "in enacting the jumble of changed circumstances that would affect an Order under 3104," did not contemplate the situation of "a stepparent with whom a child has been living in an intact relationship, that adopting the child, and having that be a change of circumstances, would automatically change anything." We hold the trial court's construction of the statute is erroneous.

### A. *The Plain Meaning of the Words in the Statute Requires Us to Treat Stepparent Adoption as a Change of Circumstances.*

Section 8616 explains the adoptive parent-child relationship: "After adoption, the adopted child and the adoptive parents shall sustain towards each other the legal relationship of parent and child and have all the rights and are subject to all the duties of that relationship." Once Hector's petition for adoption of Daniel was granted, Hector became Daniel's parent for *all* purposes, including grandparent visitation under section 3104.

Under section 3104, subdivision (b), a petition for visitation may not be filed "while the natural or adoptive parents are married [and living together]." The statute explicitly provides its protection of parental autonomy extends not only to married, biological parents of children, but also to married adults who have become legal parents through adoption. Elizabeth, Daniel's natural mother, and Hector, Daniel's adoptive father, were married and living together and thus entitled to move the court for termination of the visitation rights granted to the Lopezes.

Section 3104 also provides: "At any time that a change of circumstances occurs such that none of [the] circumstances [entitling grandparents to file a petition] exist, the parent or parents may move the court to terminate grandparental visitation and the court shall grant the termination." To say there was no change of circumstances here is to ignore the plain language of

the statute, as well as the context of the statute as discussed below. The adoption gave Daniel a legal father. Upon the adoption, the Martinezes became a legally cognizable intact family unit, not only subjecting Hector to all the duties of parenthood, but also entitling him to all parental rights, including the right to decide with whom Daniel, as a minor, may and may not spend his time.

  B.  *The Overall Statutory Scheme Indicates the Legislature Intended Stepparent Adoption to Be a Change of Circumstances for Purposes of Section 3104.*

We need not examine the legislative history of a statute if the Legislature's intent in enacting the provision is clear. (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Here, the intent is easily discernible from prior case law and the Legislature's amendment of the relevant law. In 1993, the Legislature repealed Civil Code section 4351.5 subdivision (b), which gave grandparents standing to petition for visitation rights by joining in any custody proceeding between the parents, and replaced it with Family Code section 3103, subdivision (a) without substantive change. The Legislature also added Family Code section 3104 so grandparents were not limited to petition for visitation only in the context of a marital action between the child's parents. (See generally *White v. Jacobs* (1988) 198 Cal.App.3d 122 [243 Cal.Rptr. 597] [prior to 1993 amendments, grandparents could not bring an independent action to establish visitation rights with a grandchild because no statutory authority expressly permitted such an action].)

Prior to the 1993 amendments to the Family Code, in *Reeves v. Bailey* (1975) 53 Cal.App.3d 1019, 1026 [126 Cal.Rptr. 51], the court held adoption did not automatically terminate previously granted grandparental visitation rights "where the adoption did not work any major change in the child's living arrangement from what they were when visitation was granted." The trial court in this case relied on *Reeves* as evidence the Legislature did not intend adoption to be a "change of circumstances." It reasoned in order to change case law, the Legislature would have had to specifically enumerate adoption by a stepparent as a change of circumstances. We disagree. We presume the Legislature knew of the existing case law when enacting section 3104. (See *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) However, no statute can ever individually address every possible scenario. The Legislature did not have to expressly provide "stepparent adoption automatically enables termination of visitation rights if a parent so moves." Instead, it chose to list the elements which must be present before grandparents may petition for or maintain court-ordered visitation: either the parents

must be living apart or one parent must be absent for at least a month.[2] (§ 3104, subd. (b)(1), (2).) Upon Daniel's adoption by Hector, neither of these two prerequisites was present, and thus, upon Elizabeth's motion, the trial court was required to terminate visitation.

This statutory scheme promotes sound public policies. First, it gives great deference to the integrity of the family unit and to parental autonomy. The statute presumes parents act in the best interest of their children and was "not intended to disturb the long-standing inclination of California courts to defer to the jointly expressed wishes of the parents except in the most unusual and extreme cases." (*In re Marriage of Gayden* (1991) 229 Cal.App.3d 1510, 1520 [280 Cal.Rptr. 862].) Thus, when parents agree visitation with a third party is not in the best interest of a child, the statute presumes this decision is correct. (§ 3104, subd. (e) ["There is a rebuttable presumption that the visitation of a grandparent is not in the best interest of a minor child if the natural or adoptive parents agree that the grandparent should not be granted visitation rights"].) Further, the decision to generally limit standing for third parties to bring visitation petitions to those instances in which a minor's parents have already initiated a custody proceeding shows the Legislature's recognition such proceedings can put a child through much hardship and trauma. (See § 3100, subd. (a) [giving courts, during custody proceedings, the discretion to grant reasonable visitation rights to any third person "having an interest in the welfare of the child"].) In sum, the Legislature has properly chosen to minimize the occasions in which a child must be exposed to state-involved conflicts and, when those occasions do arise, parental autonomy is given priority.

The enactment of section 3104 also demonstrates the Legislature's recognition of the importance of family ties and the value of a relationship between grandparents and grandchildren. But the key to understanding the Legislature's intent is to remember the primary impetus behind the provision was not the strengthening of grandparental visitation rights, but the protection of the best interest of the child. Even when grandparents do have standing to file a petition, visitation rights are never granted unless the court finds the visitation is in the child's best interests.

These policies make clear section 3104 was drafted to balance the often conflicting values of parental autonomy and the child's interest in having a relationship with grandparents. In drafting the Family Code, the Legislature honored the integrity of the nuclear family unit and the ability of married, cohabiting parents to make decisions free from state interference. Here,

---

[2]Given the way the statute is drafted, we believe if the Legislature had intended to preserve an exception for stepparent adoption, it would have said so.

Hector's adoption of Daniel could only have been granted if found to be in Daniel's best interest. Accordingly, the adoption signaled the state found Daniel's best interest would be served with both Elizabeth and Hector in charge of parenting decisions, and was willing to recognize the Martinezes as a family unit. (See § 8601, subd. (b) [requiring a court to find the adoption of a child by a stepparent is "in the best interest of the parties and is in the public interest" before it may approve the adoption]; see also *Reeves v. Bailey, supra,* 53 Cal.App.3d 1019, 1022-1023 ["[T]he basic purpose of any adoption is the welfare, protection and betterment of the child. In adoption proceedings, the court is to be governed solely by the welfare of the child"].) It is therefore unreasonable to believe the Legislature would refuse to grant the Martinezes full parental autonomy by permitting a court to second-guess their joint parental decision to deny visitation to the Lopezes.

II.   *California's Grandparent Visitation Statute Is Not Affected by the Recent Supreme Court Decision in Troxel v. Granville.*

Although appellant did not challenge the constitutionality of section 3104, we find a brief constitutional analysis of the statute is merited in light of the United States Supreme Court's recent consideration of the issue of grandparent visitation statutes in *Troxel v. Granville* (2000) 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49]. Under a Washington state statute, paternal grandparents petitioned for visitation with their grandchildren following their son's death. The statute provided: " 'Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.' " (*Troxel v. Granville, supra,* 530 U.S. 57, 61 [120 S.Ct. 2054, 2057-2058], quoting Wash. Rev. Code § 26.10.160, subd. (3).) The Washington Supreme Court found the statute violated the United States Constitution because it impermissibly infringed upon the fundamental right of parents to raise their children. (530 U.S. at pp. 62-63 [120 S.Ct. at p. 2058].) The United States Supreme Court agreed and, without delineating the precise parameters of parental rights, found the statute was "breathtakingly broad" and thus infringed on parental rights. (*Id.* at p. 67 [120 S.Ct. at p. 2061].) The Washington statute did not accord any deference to parental rights, but rather seemed to allow a court to presume ex ante grandparental visitation is in a child's best interest, and to place the burden on the parent to overcome this presumption. (*Id.* at p. 69 [120 S.Ct. at p. 2062].)

It can hardly be said the California statute at issue in this case comes even close to being so "breathtakingly broad" as to be unconstitutional. On the contrary, it explicitly limits the situations and circumstances in which grandparents can petition for visitation rights. Even when grandparents are statutorily given standing to petition for visitation rights, there is always a

rebuttable presumption in favor of the parents when the parents conclude visitation is not in the best interests of the child. (§ 3104, subds. (e), (f).) The result is a balance between the child's interest in the grandparental relationship and the right of the parents to rear their own child as they see fit.

In *Troxel v. Granville, supra*, 530 U.S. 57, 64 [120 S.Ct. 2054, 2059], the Supreme Court recognized states with statutes granting grandparents standing to petition for visitation "have sought to ensure the welfare of children therein by protecting the relationships those children form with such third parties" and provide children with the "opportunity to benefit from relationships with statutorily specified persons—for example, their grandparents." It is reasonable for the California Legislature to find it necessary to protect children by providing them with access to loving, familial relationships. However, in protecting the child's interest in the availability of familial relationships outside the nuclear family, the Legislature did not ignore the importance of parental autonomy. First, unlike the Washington statute, not all third parties have an independent avenue to gain visitation rights; only grandparents may petition for visitation outside of a custody proceeding. (Compare § 3100, subd. (a) with § 3104.) Second, the family unit must be already disrupted in some way before even a grandparent may petition the court for visitation. (§ 3104, subd. (b)(1)-(4).) Finally, once a grandparent has met the standing requirements, a court may only grant visitation after finding it is in the child's best interest and there is a preexisting bond between the grandparent and child. (§ 3104, subd. (a)(1), (2).) Thus, even when a grandparent is allowed to petition for visitation, there are still substantial obstacles to overcome before the petition is granted. Unlike Washington's statute in *Troxel*, the California statute only allows a petition to be filed when some disruption to the nuclear family has already occurred, whether it be a marital spat resulting in one spouse moving out of the family residence, a custody proceeding pursuant to a separation, or an absent, unmarried parent, and makes clear a court must accord extreme deference to parental authority while considering the best interest of the child.

## CONCLUSION

We recognize this may be one of those relatively rare cases where adherence to a statutory rule may work an injustice in the particular case. Indeed it may prove to be inconsistent with the best interest of this particular child. Policy assumptions about what *generally* benefits a youngster may not always prove true in specific cases, especially those as unique as this one where the grandparents essentially functioned as the child's parents during his early formative years. Nonetheless, we find the statutory language clear and unambiguous and, of course, binding on this court.

## DISPOSITION

The order is reversed. Each party to bear its own costs on appeal.

Lillie, P. J., and Neal, J., concurred.