Filed 1/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOYCE R. FINBERG,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>PHILIP MANSET et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B245787<br>(Super. Ct. No. 1386026)<br>(Santa Barbara County) |

Joyce R. Finberg appeals an order dismissing her petition for visitation with her grandson J. (Fam. Code, § 3104.)[1] J. was adopted by his stepfather. Section 3104, subdivision (b) limits grandparent visitation when the parents are married and living together, but subdivision (b)(5) provides an exception where "the child has been adopted by a stepparent."

The trial court found that section 3104, subdivision(b)(5) (hereafter "subdivision (b)(5)") violates equal protection principles because it does not rationally distinguish between nuclear families with biological parents and families with adoptive parents. It therefore concluded Finberg lacks standing to bring her petition.

Here we conclude subdivision (b)(5) does not violate the equal protection clauses of the federal or state Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7(a).) We reverse. Finberg has standing to file her petition.

---

[1] All statutory references are to the Family Code.

Paternal grandmother Finberg petitions to establish grandparent visitation with J. over the objection of his natural mother Pollyana Manset and his adoptive father Philip Manset.

Pollyana was previously married to Finberg's son, Anthony.[2] Pollyana and Anthony had one child, J., in 2001. They divorced in 2004.

Pollyana married Philip in 2005. They had two children, S. and A. In January 2009, Philip adopted J., after the court terminated Anthony's parental rights.

Finberg argues she has had a close relationship with all three children throughout their lives and was once J.'s primary caregiver. The Mansets agree that initially Finberg was helpful with the children, but contend she became controlling, did not respect their wishes concerning the care of the children, and deliberately undermined their parenting authority.

In November 2011, Pollyana would not allow contact between Finberg and the children. A few months later, Philip filed a request for a domestic violence restraining order to keep Finberg away from Pollyana, the three children, and himself. The next day, Finberg filed a request for grandparent visitation with the three children. The Mansets moved to dismiss Finberg's petition for visitation with all three children on the ground that Finberg lacks standing because the children's parents are married and living together. (§ 3104, subd. (b).)

Finberg concedes she does not have standing to request visitation with S. and A. But she argues that is not the case with J.

DISCUSSION

*Standard of Review*

We review de novo questions of interpretation and constitutionality of a statute. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 360.) We decline the Mansets' invitation to review the trial court's

---

[2] For the sake of clarity and convenience, we sometimes refer to the parties by their first names. No disrespect is intended.

order for abuse of discretion on the ground that it was within the court's inherent power to dismiss a petition that was unlikely to succeed. Whether or not such power exists, the court did not invoke it. The court dismissed the petition because it determined that section 3104 is "unconstitutional" and is not supported by any "rational basis." It is true the trial court wrote, "The fact is there is no rational basis for the distinction between biological and adoptive parents with respect to Family Code § 3104; if the 2006 amendment had that [e]ffect the statute is unconstitutional. To permit such litigation would obviously be very divisive and acrimonious; the Court understands Grandmother's concern and appreciates her interest; but in this case, under these unusual circumstances, there can be sensible reason to proceed with this litigation; common sense still has a rational place in our system of justice."

The trial court observed that the petition was divisive, but it did not decide the case on its merits, nor was it asked to. In any event, we are loath to sanction the court's so-called "inherent power to dismiss the petition" in light of the clear language of the statute. A section 3104 petition requires the court to decide whether a "preexisting relationship [exists] between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child" (subd. (a)(1)), and to balance the "interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority" (subd. (a)(2)), while applying a "rebuttable presumption that the visitation of a grandparent is not in the best interest of a minor child if the natural or adoptive parents agree that the grandparent should not be granted visitation rights" (subd. (e)). The trial court did not reach these issues.

*Grandparent Visitation Pursuant to Subdivision (b)(5)*

A grandparent's right to visitation is statutory. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219.) Grandparent visitation may be ordered in limited circumstances when a parent is deceased (§ 3102), when custody proceedings are pending (§ 3103), or when the parents are unmarried or certain other conditions exist (§ 3104). Only section 3104 applies here.

3

Section 3104, subdivision (b) limits the circumstances in which a grandparent can file a petition if the parents are married:

"A petition for visitation under this section may not be filed while the natural or adoptive parents are married, unless one or more of the following circumstances exist:

"(1) The parents are currently living separately and apart on a permanent or indefinite basis.

"(2) One of the parents has been absent for more than one month without the other spouse knowing the whereabouts of the absent spouse.

"(3) One of the parents joins in the petition with the grandparents.

"(4) The child is not residing with either parent.

"(5) The child has been adopted by a stepparent.

"At any time that a change of circumstances occurs such that none of these circumstances exist, the parent or parents may move the court to terminate grandparental visitation and the court shall grant the termination."

Finberg has standing to file a petition for visitation of J. under the plain language of subdivision (b)(5) because J. is a "child [who] has been adopted by a stepparent." Whether she will prevail on the merits depends on her ability to overcome a presumption against visitation. (§ 3104, subd. (e).)

Subdivision (b)(5) was added in response to *Lopez v. Martinez* (2000) 85 Cal.App.4th 279. In *Lopez*, the natural father was absent and his whereabouts were unknown. (§ 3104, subd. (b)(2).) The maternal grandparents were involved in the child's care for years while the mother lived with them. The mother remarried and moved from her parents' home to her new husband's home, and discontinued contact with her parents. The grandparents successfully petitioned for visitation pursuant to section 3104, subdivision (b)(2) [one parent's whereabouts unknown]. But when the stepfather adopted the child, the court was forced to terminate that visitation pursuant to section 3104, subdivision (b) [change of circumstances]. The appellate court wrote, "We recognize this may be one of those relatively rare cases where adherence to a statutory rule may work an

4

injustice in the particular case. Indeed it may prove to be inconsistent with the best interest of this particular child. . . . [T]he grandparents essentially functioned as the child's parents during his early formative years. Nonetheless, we find the statutory language clear and unambiguous and, of course, binding on this court." (*Lopez*, at p. 288.)

The Legislature used "common sense" in drafting its response to *Lopez* by adding subdivision (b)(5) to "remove the possibility of a stepparent preventing visitation with the child by adopting that child." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2517 (2005-2006 Reg. Sess.) June 27, 2006, p. 1.)

Unlike the adoptive father in *Lopez*, Philip did not adopt J. to prevent Finberg's visitation. He adopted him before acrimony arose between the parties and three years before Finberg filed her petition for visitation. Nevertheless, J. is a "child [who] has been adopted by a stepparent." Subdivision (b)(5) plainly permits Finberg to file the petition. Whatever the outcome of this contentious litigation, Finberg is entitled to a hearing.

*Equal Protection Challenge to Subdivision (b)(5)*

The Mansets contend that subdivision (b)(5) violates their rights to equal protection under the state and federal Constitutions by treating adoptive parents differently from biological parents. They point out that, after adoption, "the adopted child and the adoptive parent shall sustain towards each other the legal relationship of parent and child and have all the rights and are subject to all the duties of that relationship." (§ 8616.)

We presume a legislative act is constitutional and must uphold it unless a "''conflict with a provision of the state or federal Constitution is clear and unquestionable.'''" (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 279-280.) We must consider whether the Mansets have shown that the two groups, adoptive and biological parents, are sufficiently similar to require "some level of scrutiny" to determine whether the distinction is justified. (*Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1488.) The Mansets have shown the classification here affects two

5

similarly situated groups in an unequal manner.  Subdivision (b)(5) treats nuclear families with natural parents differently from nuclear families with an adoptive parent who was formerly a stepparent.

We next decide the level of scrutiny to apply to determine whether the distinction is justified:  strict scrutiny or rational basis.  (*Fenn v. Sherriff*, *supra*, 109 Cal.App.4th at pp. 1488-1489.)  We apply strict scrutiny in cases that operate to the disadvantage of suspect classes or impinge on fundamental rights.  (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 207.)  Parents have a fundamental right to make decisions concerning the care, custody, and control of their children under the due process clause of the Fourteenth Amendment to the United States Constitution.  (*Troxel v. Granville* (2000) 530 U.S. 57, 66.)  But subdivision (b)(5) does not have an appreciable impact on that right and therefore does not require a strict scrutiny analysis.  (*Fenn*, at p. 1489.)

"Although a fundamental interest may be involved, . . . not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny standard.  When the regulation merely has an incidental effect on exercise of protected rights, strict scrutiny is not applied."  (*Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 47.)  Subdivision (b)(5) has only an incidental effect on the exercise of parental rights.  The petitioning grandparent must establish a preexisting relationship with the child and overcome a presumption that visitation over the objection of the parents is not in the best interests of the child.  (§ 3104, subds. (a)(1), (2) & (e).)  Faced with a similar equal protection challenge to section 3102, *Fenn* applied the rational basis test.  The grandparents' ability to petition for visitation under that statute had only an incidental effect on parental rights in view of a presumption that visitation over parental objection was not in the best interests of the child.  "The mere fact that defendant and his wife are *subject to* a visitation petition, however, is not a 'real and appreciable impact on, or a significant interference with the exercise of' their fundamental right to make parenting decisions."  (*Fenn v. Sherriff*, *supra*, 109 Cal.App.4th 1466, 1489.)

6

The distinction drawn by subdivision (b)(5) bears a "'rational relationship to a conceivable legitimate state purpose.'" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16.) The state has a legitimate and compelling interest in promoting the best interests of children. (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 446.) It drew the classification of subdivision (b)(5) to promote that interest by allowing a court to consider grandparent visitation for children of divorce notwithstanding a stepparent adoption. The Assembly Judiciary Committee wrote, "Presently, a stepparent may adopt a minor child . . . and the grandparents are then essentially statutorily barred from seeking visitation. This measure addresses that conundrum, permitting but certainly not requiring a family court to allow for reasonable visitation by the grandparents with the grandchild only when the court finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child, and the court balances the interest of the child in having visitation with the grandparent against the right of parents to exercise their parental authority." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2517 (2005-2006 Reg. Sess.) May 9, 2006, p. 3.)

The author of Assembly Bill No. 2517 expressed concern for a child's best interest: "It is common knowledge that children who have strong, loving adults in their lives thrive. Grandparents can be that strong, loving adult for a child. These relationships become even more vital during times when families are dissolving and changing. . . ." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2517, *supra*, May 9, 2006, p. 2.)

The Senate Judiciary Committee expressed a similar rationale for subdivision (b)(5): "This addition removes the ability for a stepparent to adopt that child to prevent a grandparent otherwise found to qualify for visitation, from having that visitation." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2517, *supra*, June 27, 2006, pp. 3-4.) "Often families are ripped apart through divorce or other negative circumstances. Solid relationships that children could once count on, are then in doubt and become less stable. Stability can come through maintaining strong

grandparent/grandchild relationships through those family changes.  Grandparents often play many roles in a family.  They offer emotional support and comfort, relay family history, and give advice.  [¶]  Simply, [Assembly Bill No.] 2517 would allow grandparents to petition the court for visitation of their grandchildren after a stepparent adoption has occurred.  This will allow the court to decide if visitation with the grandparent is in the best interest of the child.  If so, it will allow the grandchild/grandparent relationships to continue where they are needed most."  (*Id.* at p. 2.)  The reasons provided by the Legislature for permitting a petition when a child is adopted by a stepparent are rational and legitimate.  Subdivision (b)(5) does not violate the equal protection clause of the state or federal Constitution.

DISPOSITION

The order dismissing Finberg's petition for grandparent visitation is reversed.  The parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.

GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

8

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Charles M. Oxton; Ferguson Case Orr Paterson LLP, Wendy C. Lascher, Joshua S. Hopstone, for Plaintiff and Appellant.

Daniel A. Murphy for Defendants and Respondents.