Filed 3/30/26  Martin v. James-Martin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CRYSTAL M. MARTIN, | |
| Plaintiff and Respondent, | E085704 |
| v. | (Super.Ct.No. FAMSB2405610) |
| MONIQUE R. JAMES-MARTIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael J. Gassner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Monique R. James-Martin, in pro. per., for Defendant and Appellant.

Mark Milstead, for Plaintiff and Respondent.

Defendant and appellant Monique R. James-Martin (mother) refused to allow plaintiff and respondent Crystal M. Martin (stepgrandmother, "SGM") to visit her stepgrandsons following the death of her husband/mother's father Michael Martin

1

(grandfather "GF").  SGM petitioned for visitation rights pursuant to Family Code[1] sections 3100 through 3104, inclusive, which give grandparents/stepparents/interested persons standing to do so.  Over mother's objection, the trial court granted the petition, ordered unsupervised visits twice a month, and found that SGM represents stability in the grandsons' lives.  Mother appeals contending the court failed to apply the statutory requirements under section 3104, and the order violated her constitutional rights as a parent.  We affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

Mother has two children, born 2012 and 2014 (the boys).  The boys have different fathers, neither of whom is married to mother.

On August 16, 2024, SGM petitioned for grandparent visitation.  She alleged the following:  (1) the boys' parents are not married to each other or in a registered domestic partnership; (2) she met the boys in 2017; (3) she married GF in 2018 (SGM and GF will be referred to as GP's); (4) from 2017 until December 2022, the boys and mother lived with GP's for a majority of the time; and (5) there were periods of time (specifically June through December 2022) when the boys lived exclusively with GP's while mother lived in trucks or motel rooms with Derion James Sr. (James).  Mother and James married in November 2022.  SGM described James as abusive toward mother, prompting GP's to encourage her to leave him.  On December 22, 2022, James attacked GF; as a result of

---

[1] Further statutory references are to the Family Code unless otherwise stated.

2

injuries sustained in the attack, GF died two months later. In January 2024, James was charged with the first degree murder of GF.

Since December 2022, mother prevented SGM from seeing or speaking with the boys. SGM petitioned for visitation so she and her children may continue the bond they have with them; she offered photographs of time spent together. Although the ongoing homicide investigation delayed the filing of her petition, she sought monthly visitation (two weekends) until mother's mother (GM) is granted visitation, then her (SGM) visitation would drop to one weekend a month.

On September 5, 2024, mother moved to quash SGM's petition on the grounds of misrepresentation. She asserted SGM "falsely claimed to be the maternal grandmother, whereas she is actually the step-grandmother"; however, mother also acknowledged that SGM "identifie[d] herself as the step-grandmother." Mother faulted SGM for calling Child Protective Services (CPS), asserting her actions "constitute harassment and intimidation." She claimed the "ongoing tension and conflict between [her] and [SGM] have created a stressful environment that is not in the best interest of [the boys, and a]llowing visitation would undermine [her] authority as a parent and interfere with [her] ability to make decisions that are in the best interest of [the boys]." In response to the petition, mother denied any preexisting relationship between SGM and the boys, and argued visitation is not in their best interests.

On October 2, 2024, SGM provided additional information to the trial court. She stated: (1) she is not the only family member concerned about the boys' safety as evidenced by mother cutting contact with GM who has not seen the boys since November

3

2023; (2) she only sees mother at James's murder case hearings, which mother attends in support of him; (3) mother gave temporary guardianship and rights over the boys to GM from January 19 through June 20, 2023, so she (mother) could stay with James "while they perceived that they were on the run from the law"; (4) while James was in jail, mother threatened the boys "with him being let out and whooping them if they didn't 'behave'"; (5) the boys witnessed James attack GF but are not in therapy; and (6) mother has threatened to send the boys away to avoid CPS. On January 25, 2025, SGM submitted a declaration to further clarify that mother is her stepdaughter through marriage, the boys know her as "Grandma," "Grandma Crystal," or "Crystal," and she and GF would take mother and the boys on vacations, to dinners, to school activities, and to family reunions. SGM sought stepgrandparent's rights pursuant to section 3101, subdivision (a), which provides, "Notwithstanding any other provision of law, the court may grant reasonable visitation to a stepparent, if visitation by the stepparent is determined to be in the best interest of the minor child." She again submitted several photographs of time spent with the boys.

On January 27, 2025, the trial court denied mother's motion to quash. It then granted SGM "unsupervised visits every 2nd and 4th Saturdays of the month from 10:00 am until 4:00 pm." The court reasoned that "there are different people associated with Mother that are in Jail or Prison. [SGM] represents stability in the children's lives." Mother appeals.

4

## II.  DISCUSSION

Mother contends SGM lacks standing under section 3104 because she is not a biological or adoptive grandparent.  (*White v. Jacobs* (1988) 198 Cal.App.3d 122 [prior to 1993 amendments, grandparents could not bring an independent action to establish visitation rights with a grandchild because no statutory authority expressly permitted such an action].)  Assuming SGM has standing, mother argues the trial court erred by failing to give the constitutionally required deference to her decision (regarding visitation) as a fit parent.  (*Zasueta v. Zasueta* (2002) 102 Cal.App.4th 1242, 1253-1255 (*Zasueta*) [order granting grandparent visitation was reversed because lower court failed to apply the presumption of parental fitness, discounting the mother's concern about the grandparents]; *Troxel v. Granville* (2000) 530 U.S. 57, 72-73 (*Troxel*) [statute that authorized courts to grant any person visitation upon a finding it served the child's best interests held unconstitutional as applied because "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made"]; but see *Lopez v. Martinez* (2000) 85 Cal.App.4th 279, 287-288 (*Lopez*) [Section 3104 is not unconstitutional because it explicitly limits the situations and circumstances in which grandparents can petition for visitation rights, and it creates a rebuttable presumption in favor of the parents' decision that visitation is not in the child's best interests].)

### A.  Standard of Review

"Generally speaking, '[t]he standard of appellate review of . . . visitation orders is the deferential abuse of discretion test.  [Citation.]  The precise measure is whether the

trial court could have reasonably concluded that the order in question advanced the "best interest" of the child.  We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked.  [Citation.]' [Citation.] [¶]  '"[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . .  Broad deference must be shown to the trial judge.  The reviewing court should interfere only '"if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." . . .'" [Citations.]' [Citation.]  [¶]  '"The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." [Citations.]' [Citations.]" (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182.)

   *B.  Analysis*

   *1.  Standing*

   We begin with mother's challenge to SGM's standing to request visitation. According to mother, SGM's reliance on section 3104 (grandparents may petition for visitation of their grandchildren) is misplaced because she is a stepgrandmother.  (§ 3104, subd. (a).[2])  However, SGM did not seek grandparent visitation solely under section

---

[2]  "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following:  [¶]  (1) Finds that there is a preexisting relationship between the grandparent

*[footnote continued on next page]*

3104; she invoked sections 3100 through 3104, particularly section 3101, subdivision (a), which authorizes the trial court to grant reasonable visitation to a stepparent, if it is determined to be in the best interest of the minor child. On appeal, she also references section 3100, which authorizes the court to grant reasonable visitation rights to "any other person having an interest in the welfare of the child." While none of the statutes referenced by SGM expressly grant visitation rights to stepgrandparents, neither do they explicitly proscribe such rights.

California's statutory scheme gives the greatest protection to "the integrity of the nuclear family unit and the ability of married, cohabiting parents to make decisions free from state interference" by shielding married, cohabiting parents from the filing of a grandparent visitation petition except in very limited situations. (*Lopez*, *supra*, 85 Cal.App.4th at p. 286.) Thus, a grandparent's right to visitation is statutory, but evolving. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 219-220[3]; *Lopez*, at p. 286 [prior to 1993 amendments, grandparents could not bring an independent action to establish

---

and the grandchild that has engendered a bond such that visitation is in the best interest of the child. [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority." (§ 3104, subd. (a).)

[3] "Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory. [Citation.] Three California statutes expressly address grandparent visitation: [S]ection 3102, which permits visitation by a deceased parent's children, siblings, parents, and grandparents if such visitation would be in the best interests of the child; section 3103, which permits a court in specified proceedings involving the custody of a child to grant grandparent visitation; and section 3104, which permits grandparents to petition for visitation if the grandchild's parents are not married or if certain other conditions are met." (*In re Marriage of Harris*, *supra*, 34 Cal.4th at pp. 219-220, fns. omitted.)

visitation rights with a grandchild because no statutory authority expressly permitted such an action].)  While stepgrandparents are not currently included in our legislative scheme, our statutes and "legal doctrine evolve[] over time, and appellate courts have the capability and the responsibility to recognize and explain such changes when they occur." (*K.R. v. Superior Court* (2017) 3 Cal.5th 295, 308-309; but see *Ed H. v. Ashley C*. (2017) 14 Cal.App.5th 899, 908-911[appellate court denied standing to great-grandparents because section 3104 expressly grants visitation rights to grandparents only].)  To that end, we are mindful of the fact that for many modern households, the traditional nuclear family no longer exists.  It has transitioned into a single parent household or a blended family, consisting of stepparents, half siblings, stepchildren, and stepgrandparents.  Such is the case before this court.

Mother's family is a blended family, and SGM has been part of it since 2017, first as an interested person, then as a stepgrandmother.  To deny her standing to petition for visitation simply because our laws have yet to catch up with our current social conditions—blended families—is to ignore the reality of our evolving social fabric.  ""It is common knowledge that children who have strong, loving adults in their lives thrive. Grandparents[, even stepgrandparents,] can be that strong, loving adult for a child.  These relationships become even more vital during times when families are dissolving and changing. . . .""" (*Finberg v. Manset* (2014) 223 Cal.App.4th 529, 536.)  Accordingly, we interpret our statutes broadly to provide stepgrandparents with standing to seek visitation.

Notwithstanding the above, granting stepgrandparents standing does not automatically result in granting them visitation.  Rather, the trial court must conclude that

8

it is in the best interests of the children. (§§ 3100, subd. (a) ["the court shall grant reasonable visitation rights . . . when it is shown that the visitation would be in the *best interest of the child*"], 3101, subd. (a) ["the court may grant reasonable visitation to a stepparent, if visitation by the stepparent is determined to be in the *best interest of the minor child*"], 3102, subd. (a) ["the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the *best interest of the minor child*"], 3103, subd. (a) ["the court may grant reasonable visitation to a grandparent of a minor child of a party to the proceeding if the court determines that visitation by the grandparent is in the *best interest of the child*"], 3104, subd. (a) ["the court may grant reasonable visitation rights to the grandparent if the court . . . [f]inds that there is a preexisting relationship . . . that has engendered a bond such that visitation is in the *best interest of the child*"], 3105, subd. (b) ["court may grant reasonable visitation rights to a person who previously served as the legal guardian of a child, if visitation is determined to be in the *best interest of the minor child*], italics added; *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 779 (*Stuard*) ["'the primary impetus behind the provision was not the strengthening of grandparental visitation rights, but the protection of the best interest of the child'"].) Also, even when grandparents are statutorily given standing to petition for visitation rights, there is a rebuttable presumption in favor of the parents' decision that visitation is not in the best interests of the children. (§§ 3103, subd. (d); 3104, subds. (e), (f); *Lopez*, *supra*, 85 Cal.App.4th at pp. 287-288 [statutory scheme makes clear the court

9

must accord extreme deference to parental authority while considering the best interest of the child].)

Since this case involves a blended family, we interpret the statutory scheme granting grandparents' visitation broadly and conclude SGM has standing.

2. *Deference to parental authority*

In her second claim, mother contends the trial court erred in failing to give the constitutionally required deference to her decision regarding visitation. (*Zasueta*, *supra*, 102 Cal.App.4th at pp. 1248, 1254; *Troxel*, *supra*, 530 U.S. at pp. 72-73.) We are not persuaded.

Since SGM is the boys' grandmother, albeit a stepgrandmother, we consider the issue under section 3104, the statute applicable to a grandparent's request for visitation. A trial court may grant reasonable visitation rights to the grandparents if it (1) "[f]inds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child" and (2) "[b]alances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority." (§ 3104.) A parent's objection does not automatically foreclose visitation. Rather, "'[t]he decision of [the parents] about whether and under what conditions grandparents should have visitation with their grandchildren is entitled to "special weight" under [United States Supreme Court authority]—assuming both are fit parents—but no more.'" (*Stuard*, *supra*, 244 Cal.App.4th at p. 784.) Accordingly, "[t]here is a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interest of a minor

10

child if the parent who has been awarded sole legal and physical custody of the child in another proceeding, or the parent with whom the child resides if there is currently no operative custody order objects to visitation by the grandparent." (§ 3104, subd. (f).) "To overcome the presumption that a fit parent will act in the best interest of the grandchild, a grandparent has the burden of proof and must show, by clear and convincing evidence, that denial of visitation is not in the best interest of the grandchild, i.e., denial of visitation would be detrimental to the grandchild." (*Rich v. Thatcher*, *supra*, 200 Cal.App.4th at p. 1180.)

Here, the appellate record consists of SGM's petition and declarations, along with mother's motion to quash, and her opposition. The reporter's transcript of the evidentiary hearing has not been provided. According to SGM, the trial court heard the following evidence of mother's failings as a fit mother: (1) the boys' fathers were presently incarcerated for long periods of time in prison, (2) mother's husband, James, attacked and caused the death of GF, (3) the boys witnessed the attack of their GF, (4) mother continues to live with James despite his attack on GF, and (5) James is awaiting trial for the murder of GF. Additionally, the court was provided evidence via SGM's declarations regarding the boys and mother living with the GP's, mother's transient lifestyle, James's abusive nature, and GP's role in the boys' lives. On appeal, mother does not challenge SGM's representation of the facts. Rather, she asserts (1) her husband's separate pending criminal case is irrelevant, (2) her "alleged character flaws, and accusations regarding the [boys]" amount to nothing more than "unsubstantiated allegations" that should be disregarded, and (3) she "cannot address the specifics of her husband's pending criminal

11

case . . . as she is a witness . . . and doing so would be improper and prejudicial." SGM notes the record fails to provide a full transcript of the hearing, which included relevant evidence. In response, mother faults the "court reporter's failure to provide the designated full proceedings." However, her notice designating the record on appeal only identifies the January 27, 2025, proceeding entitled "Motion to Quash (Dismissed)-Family Code 3100."

"[I]t is settled that: 'A judgment or order of the lower court is *presumed correct* . . . and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; accord, *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.""" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Specifically, unless the record demonstrates otherwise, "'a reviewing court must presume that the record contains evidence to support every finding of fact.'" (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; accord, *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) ""'[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."'" (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

12

Turning to the record before us, the trial court acknowledged mother's opposition to SGM's request for visitation and conducted an evidentiary hearing. SGM offered substantial evidence of her pre-existing relationship with the boys, along with mother's actions to separate her (SGM) from the boys following GF's death at the hands of her (mother's) husband. Based on the evidence presented, the court must have found that mother is an unfit parent,[4] and that SGM provided clear and convincing evidence to rebut the presumption that mother was acting in the best interest of the boys in denying visitation to SGM at this time or that denial of visitation with SGM would be detrimental to the boys. The court observed that "there are different people associated with Mother that are in Jail or Prison. [SGM] represents stability in the children's lives." We cannot fault this observation or conclude that the court abused its discretion in granting SGM visitation.

---

[4] The Family Code does not define "fit parent" in a specific legal term. However, case law describes a fit parent as a parent who cares for his or her children. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1129-1130 ["'[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family . . . ."].) Caring for children suggests providing a safe and stable environment void of abuse or neglect, and prioritizing the children's health, safety, and welfare.

13

## III.  DISPOSITION

The order granting SGM's request for stepgrandparent visitation is affirmed.

SGM shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
<br>Acting P. J.

We concur:

MILLER
<br>J.

FIELDS
<br>J.

14